Today is 2017-1934, Polyzen v. Radiadyne, Joseph Zito, please proceed. Good morning, your honors. I'm Joseph Zito, and with me is Luis Oliveira, counsel for the appellant Polyzen. I guess I'd like to start by again setting the context. This appeal is over the ownership issue of two patents from two different cases that were consolidated into one case. And the confusion comes from the courts conflating a product, which is shown on Appendix 126, which is a balloon and a design for a balloon, with a patent which has much broader technology, much broader claims, and many other embodiments that protects a much wider range of intellectual property. Is there any difference between the two patents on this issue? There is difference in the claims of the two patents, the disclosure of the patents. But the issue isn't any different across the two patents? The issue is not different. Do these patents claim, do they have the design for the Radiadyne product in them? Yes, one of the embodiments. Isn't that the problem? I mean, the problem is if a patent claims something owned by two owners, even if one owner only owns a very small part of it, they both jointly own the patent. Isn't that the law? If there was ownership of the underlying intellectual property, that would be correct. But the specific agreement says the Radiadyne product is the specific design, and your friend on the other side, his client, still owns that. He owns the design of that product, which is part of your patent. But you can own them. That's where we differ. It doesn't mean that he owns your IP that may have to be used in making that product, but he owns that specific design. And once you claim that specific design as part of your patent, haven't you written a patent that has two owners? No, I don't believe that's correct, because I don't believe a design is the same thing as the intellectual property. You can have a manufacturer, let's take a manufacturer of a laptop. You can ask that manufacturer to design you a very special version, a customized version. You may own the design of that customized version, and that manufacturer can't sell it to anybody else, but you can't then go claim all the underlying technology. Again, this was a company that wanted to sell a product, that couldn't make a product. And they went to Polyzone, Radiadyne went to Polyzone and said, hey, can you make us a balloon? Sure, I get that, but the problem is you've written their product into your patent. You've claimed as part of the patent their design, which they own. And when there are two different owners in one patent, you could have written this patent not to claim their design. And then you wouldn't have had a problem. But the agreement separates the design from the ownership of the underlying intellectual property. But that doesn't matter. They're not claiming they own your underlying intellectual property. They're claiming that by owning the Radiadyne product, they own that design, which is part of the patent, and therefore they're a co-owner of the patent. They're not saying they own the rest of the IP in that patent. They're saying they own that, and as part of that, they're a co-owner, which means you can't sue them. That's our case law, isn't it? When a patent claims IP owned by two different parties, both parties are owners. If the IP is owned by both parties, but the agreement separates the IP from the design. They're saying the design is not IP, but of course it's IP. It's a specific embodiment of IP. I get that you think, and you probably are right, that in order to make that specific design, they have to use your IP. But that doesn't mean the actual design itself is not intellectual property also. The contract specifically states that they needed licenses to the intellectual property. I don't see how any of this matters. It's not about your IP. They're not claiming ownership of your IP. They're claiming ownership of the specific design. It may be, and it seemingly is, that that design can't be produced without your IP. But you don't own that design, right? You're not claiming any ownership rights in that design, are you? I mean, you do now because you're also a joint owner of the patent. And we're claiming that in order for them to have the rights that they got in the contract to sell that design. It doesn't matter to me one jot whether they can sell or they have to license or the like. It's as soon as you put their design, which they own, under the clear terms of this agreement in your patent, you make them a joint owner. That's the case law. I mean, I don't understand how you get around that case law. I mean, you wrote a bad patent. Because the parties to a patent, to a contract, can assign ownership of the design without assigning ownership of the intellectual property to that design. You can assign ownership of the design if you owned it in the beginning. But you never owned this design. It's their design. You agreed it was their design all along. This is not a question of you trying to partially assign part of the patent or them trying to claim a partial assignment. They've always owned this design. The design did not exist until Polyazan created it. Regulon did not come with a design for a… Yes, but you agreed they owned it, that it's their design. This is not a design that… You came up with the idea of a bulging distal end for the balloon. A different company named Medrad already had a balloon that bulged, same shape. But you're not claiming Polyazan, right? Polyazan came up with the intellectual property. With the processing technology involved in making the end product. Right, well, it's a… But I think you've also acknowledged through your briefing all the way through that it was Radiodyne that came up with the actual design of the product. And then it was your side's job to figure out an interesting way to manufacture, through processing technology, a working version of that end product. And so what we have here is a contract where each side is agreeing that the other side gets to retain all rights to their technology that's contributed to manufacturing this product. Radiodyne gets the design, you get the whatever processing methods that come up with, that you come up with in making that end product. Now you went ahead, without telling the other side, filing a patent application that goes to what? A bunch of things, but it definitely includes a series of claims for the actual end product. Which you agreed in the contract would be those rights to that end product are reserved with Radiodyne. So in that sense, the contract doesn't help you. The contract keeps everybody's intellectual property rights separate from the other party. And by you writing claims that are directed to arguably your technology, as well as the other side's technology, you've created a situation where you're now both co-owners under the contract as well as under patent law. I think that's the point here and that's why it sounds like, Judge Hughes, there's no way out for you. If you look at it from your direction, which is right, the design that Radiodyne brought was the outside shape of the product. The patent doesn't cover the outside shape of the product. The patent covers what you've talked about as the process for achieving that shape by taking three layers of material and welding them in a certain manner. The design of the product that Radiodyne brought, that the contract contemplates, is a product having this final exterior shape. The intellectual property, the patent, covers taking three layers of material to create that shape. And so what the contract agreed was that Radiodyne would own that final shape and PolyZen couldn't make that shape for anybody else. And Radiodyne had to buy the manufactured product from PolyZen. And then there was the out. Does the patent have that final shape in it? No, the patent shows that final shape as one of the embodiments. That's correct. So you're claiming that final shape as an embodiment? We're claiming the… The patent claims the final shape, which is what they own. The patent claims attaching three layers together to make a number of shapes. Well, I've never seen a patent that has an embodiment that you're not actually claiming when you call it an embodiment of the claims. Well, there's other… There's the figure six embodiment that's in there that's not actually covered in the claims, which is in the… But do they relate to the claims or are they examples of prior art? No. I mean, if you put this as an embodiment of one of the claims, you're claiming that as an embodiment. Yes, you could make that shape using the claims. You could make that shape using… If somebody else made the shape, you would sue them for infringement? Absolutely not if they did not use three layers to make it. Prior art has the same shape, med-rad balloon. It does it with a different, completely different method. It's one layer. Well, that's because they don't have… Three layers. That's because they're not infringing the entire patent. But it doesn't mean that you haven't claimed this as an embodiment of the patent, does it? It's a claim that says take a first layer, second layer, and a third layer. So the first claim says… And result in this shape. Attach them together to result in a desired shape, not specifically this desired shape. And an example is… What are you talking about, a desired shape? This claim says medical balloon device, right? Correct. This is for the product, not the process, but for the product. For example, claim two. It's a method. So that the distal portion of the third layer bulges upwardly upon inflation. That's the bulging distal portion design of radiodyne. It does cover the radiodyne, but it's not only covering the radiodyne. You could have many other shapes of balloons that have a distal bulge. And in claim one… In claim one of the 845, which is the medical device, there is no distal bulge. And in claims I think 6, 7, and 8, which I highlighted in the brief, it's to a completely different device. Is that for the relevant inquiry? Or is the relevant inquiry whether there are any claims that are covered by and certainly directed to the bulging distal portion? And clearly there are claims 2, 3, 4, etc. that have the bulging distal portion. But the claims don't claim a final shape, which is… Again, radiodyne proved one very specific final shape. You can make that shape using this patent, but you can make many other shapes. And none of the claims are specifically constrained to this particular shape. If you took radiodyne's balloon and put another bulge on it or put a fourth layer on it, it would still infringe. But it would not be the design. So the patent doesn't… There are claims which the design would infringe. But the patent isn't the design. The patent doesn't say this is a final shape. It's not a design patent. Not a patent on a final shape. It's a patent on a way of welding three layers together or multiple layers together to get any desired shape. And in some desired shapes you have a distal bulge. In some desired shapes you have an arcuate curve, which is completely different for heart massage. In other shapes you have a pillow shape for supporting organs during surgery. There's lots of different shapes. And Claim 1 covers all those shapes. Claim 2 covers radiodyne's shape. Claim 1 covers radiodyne's shape. Claim 2 covers radiodyne's shape. Claim 2 captures the specific design that radiodyne came up with. But it's not the design that's being patented. It's the method. It's the manufacturing. It's the taking three layers to achieve a design. Mr. Zito, you're well into your rebuttal time. Do you want to save any?  Mr. Johnson. May it please the Court, Chris Johnson representing radiodyne. Your Honors, this appeal concerns three issues. First, it's undisputed that radiodyne owns radiodyne product and design under the DCA. Second, it's undisputed that the patents in suit include radiodyne product and the design under the DCA. And then third, under straightforward application of the Lucent v. Gateway, radiodyne is at least a co-owner of the patents in suit. When you say it's clear that the patent covers the radiodyne design, what do you mean? Which claim? For the 497 patent, Your Honor. Claims 2, 3, and 5. And in the 845 patent, claims 9 and 11. But isn't it true? What is the portion of claim 2, which is a dependent claim on claim 1? Did the radiodyne design have a first thermoplastic film layer? Yes. The radiodyne design is a three-layer medical balloon device with an inflated state distal bulge. I guess Mr. Zito was claiming that it was just the shape. The radiodyne's contribution was simply the shape, where the bulge was. Did radiodyne bring to the table and participate in the invention of the layering of the film in order to come up with this product? So radiodyne did come to PolyZen and say, I want an inflated state distal bulge medical balloon device. It was PolyZen that said, we can achieve that with three layers. But as the court was asking Mr. Zito, the contract says radiodyne owns the design. And the design is more than the shape. The design is the structure, the materials, the form of the balloon. All of that is part of the design. If you look at the drawing Mr. Zito was referencing on A126, that is a three-layered balloon device with an inflated state distal bulge. That is radiodyne product. That is the design that the parties agreed radiodyne owned. And that has to be given meaning. As Judge Hughes was alluding to, of course that includes ZIP. That is that design. That is what radiodyne owns. And ownership of that. But they didn't mean to transfer ownership of their underlying IP about the three-layer and stuff to you. They still own that, right? If they had written, if they had patented it already issued before they had signed the DCA that was two or three-layer technology, that would be PolyZen under the contract. I agree. But right now it's not because you're a co-owner of the patent. So you now own all their stuff. And they also own all of your stuff. That is correct. Because this was not a pre-issued patent that falls into Pope and Waterman, where there was an attempt to divide up ownership. This case is within Lucent. Before the patent issue, the parties agreed radiodyne owned the design. And then once one claim of the patent is to that design, then we have co-ownership of the entire patent by both parties. What if they had written a patent that included their technology in all other shapes except the radiodyne product? There's no mention of a distal end bulge or whatever it is. Would you still own their underlying technology because of this agreement? Or in that case, would they have kept the rights to everything and there just wouldn't be a patent on the distal end bulge? You are correct, Your Honor. Radiodyne would not be claiming ownership of it. If they had drafted the patent to avoid claiming radiodyne design, if that had been excluded from all of the claims, radiodyne would not have an ownership interest in that patent. What if the patent had just claim one in it? I believe radiodyne would be a co-owner of that patent because that would include the radiodyne design within the scope of the claims. Why? It doesn't have the distal portion bulging upward upon inflation. Why would radiodyne be a co-owner of just claim one? Because that patent within its scope includes the design, as Mr. Izito alluded to. He considers it an embodiment of that patent. And once we have part of the scope of that patent owned by radiodyne— Because something's an embodiment of a patent doesn't mean it's claimed. There's a million embodiments and a million different patents that aren't claimed by a particular patent. That's why you end up having lots of divisionals, right? People claim one embodiment and one patent and then pursue a different embodiment and a different patent. I agree, Your Honor. So just because it's a disclosed embodiment in the spec doesn't mean it is what's claimed. I was working under the assumption that the question was, if the claim included within its scope the radiodyne design— No, I think Judge Chen asked you, what if claim one is the only claim in the patent? Is your argument that includes the radiodyne design? My argument is that includes the radiodyne design. Why? Radiodyne design? Because that claim is broader than but includes the radiodyne design. It's not specific to the radiodyne design, but it does include it. But I think the court is correct that the patents we have in front of us here, if we look at claims two, three, and five, that are specific to the three-layer balloon with the inflated state disturbance. That's what I'm wondering. This is all hypothetical, obviously, because the patents don't just have claim one. But if it was claim one, do we have any case law that has explained that, you know, how do we understand, how do we determine whether a purported inventor truly was an inventor for a specific claim or maybe a co-inventor for a specific claim of a patent? I mean, this case is an easier case because it specifically calls out the particular embodiment that radiodyne envisioned. But do we have any case law that is more like the hypothetical of just claim one where we've said as long as there is some very broad claim that is claiming subject matter so broadly that it does, in fact, encompass the embodiment conceived of by this other purported inventor, that is good enough to make that purported inventor a co-inventor of this patent and therefore a co-owner of that patent upon its issuance? Do we have any case law that's gone that far and said as long as a claim encompasses a particular embodiment by somebody else, that somebody else gets to be deemed a co-inventor? I haven't seen any cases with that factual scenario. But using the inventorship analogy, I would say, for example, if two parties come together and write a patent that says claim one, A and B, and A came from one party and B came from the other party, I would say they would both be co-owners of that patent. If you look, usually we do our inventorship analysis on a limitation-by-limitation basis. So if one of those limitations was within the scope or is to the design, then that would seem analogous, that would result in the co-ownership of the whole. What if somebody, two companies came up and collaborated on a car together and party B came up with a very interesting novel new braking system and then the other party came up with a way to make the car all-electric and then the claims are for an all-electric car. It's completely silent on the braking system. Is the guy that came up with the braking system a co-inventor of that claim that is directed only to an all-electric car? Because that claim is so broad, it covers an all-electric car with any kind of braking system, including the braking system that was invented by the other guy. So under that factual scenario, I would say no, Your Honor. However, if those parties had entered into a contract before the patent issue that said we agree that we will jointly own any car, any IP that covers the car we develop. Wait, does this contract say we will jointly own IP? No, it does not. I was addressing the hypothetical. It does not say jointly own, Your Honor. I agree. Please continue. Sorry. No, I was not trying to argue that. But in the hypothetical, it doesn't matter. If it said jointly own or the brake inventor will co-own or will own, then if they had an issue that covered his braking system within the scope of the claim to a car, I think then he would have an argument that he would be a co-owner of that patent. But I think on the inventorship, just because it's a broader patent issue, that does not give him an ownership. Can I just be clear? I mean, the case in front of us has to do with standing. That is correct. It doesn't have to do with ownership. This isn't a PTO correction of inventorship on a patent case. Now, we may make a holding that through collateral estoppel or through res judicata or something will allow you to direct, to file some motion with the PTO to direct them to change the inventorship, but we're not actually deciding ownership technically, right? We're deciding whether you are a co-inventor and, therefore, can't be sued. I believe you are deciding whether the district court was correct in that under the DCA, there is co-ownership of the patents in suit. And then the legal repercussion of that co-ownership holding is there is no standing for Paul Isen to bring his patent infringement case. See, here's the problem. I'm just having a little bit of trouble with this co-ownership concept because what you really are arguing is somebody on our end should have been listed as an inventor, right? I don't believe so, Your Honor. I believe we have made that argument. That is a separate argument. But our argument is based on the contract. The contract says we own the design and the claims include. The contract says you own the design. That is correct. And it says they own their tech. That is correct. Now, they've filed a patent which has at least one claim that combines the two. That is correct. And then we're in Lucent v. Gateway. You own your design. How does that mean you own the patent? Because we own the design, that subject matter. The design. And then once that subject matter was included within the patent after the post-issuance patent, then we're in Lucent v. Gateway, and the result is co-ownership. It's the co-mingling of something owned by Regudine. I don't think you're right. The patent is a distinct legal right from the design. You own the design. I don't think that means you own a patent. It might mean they can't get a patent on your design, or if they get a patent, you need to be listed as a co-inventor. But I don't understand how you owning a design means you own a patent somebody else files on that design. I believe it's through the contract that we are a co-owner. I believe, I mean. How? You own the design. Nothing in the contract talks about patent rights. Because the parties agreed. Are you going to pay them half of the prosecution fees since you now think you own part of the patent? They sought a different property right than just your design. They sought a patent on that design. It cost them money to obtain that separate and distinct property right from what's discussed in this claim. I'm struggling. Look, I'll tell you right now. You're a co-inventor, or whatever it means. They don't have standing. But I don't know how to write this and explain it. Because I don't see how you're a, quote, co-owner of the patent. I don't see anything in this contract that talks about ownership of patent rights. I see that they have tried to obtain a patent partially covering your design, which is improper under our precedent related to inventorship. If you contribute to the inventorship of any one claim, the conception of any one claim, you're a co-inventor. And so I get, ultimately, that because somebody within your company is a co-inventor, they can't assert a patent against you. I get that part. But I just don't know how it makes you magically a co-owner. I don't know what that means. I believe I would direct the court to Lucent v. Gateway. Because in that case, Lucent argued the issue there was whether something was new work or existing work. There was a date that began new work as the state going forward. And so the issue was, I'll use the example from the claim two in that case, which was the modified discrete cosine transform, the MDCT. The issue was, when did the MDCT become part of the work on the audio coder? And Lucent argued MDCTs were known in the prior art. That wasn't an inventive contribution. Fraunhofer can't be a co-owner because they didn't contribute anything to the invention. And this court said, no, we're not looking at invention. We're looking at the contract. The contract says new work as of this date. And the record was very clear with Jamal that the MDCT work was done after that date. Therefore, Fraunhofer was a co-owner because the MDCT was new work, and new work was jointly owned. And once they were co-mingled, existing work— There is no joint ownership here. That contract specified joint ownership. There is no specification of joint ownership here. They stole your design and tried to get some sort of exclusive rights to it. Totally agree, not proper. They don't get to do that. And then they certainly don't get to turn around and then assert it against you. I'm with you, but I don't see how that makes you a co-owner on the property that they got. They shouldn't have that property. Or they should only have that property if your name is added to it as a co-inventor. That's why we have the correction of inventorship portion both in courts and in the PTO. But I don't see how you're magically a co-owner absent adding an inventor's name onto the patent. Again, I would direct the court to Lucid VGateway because the subject matter of the design is owned by Radydyne. And then Polyzant sought a patent that included that design within its scope. But that contract said any intellectual property rights would be jointly owned. There's nothing here that says this. They just stole your thing. Okay, so suppose that they stole entirely your design. Suppose that you came to them with a design, 100% yours, none of it was theirs. You came to them with a design, you showed it to them, and you just asked them, can you mass produce this for us? They're just one of these importers or something that is going to mass produce, they're going to machine the product for you. No ingenuity involved whatsoever. You come to them with a design, you say, can you machine the product? They say yes. They turn around and file a patent on that whole design. They are not the inventor at all. Do you think you own that patent? Or do you think that patent is invalid for failure to identify correct ownership or that alternatively ownership should be replaced with your company's name? But do you actually think you own the patent that they pursued under my hypothetical? Absent some order or proceeding that would find that because of the incorrect inventorship or something? No, I don't think so. I don't think the issue here is the contract. And I want to go back to Lucent v. Gateway really quickly, where I think it doesn't matter that Lucent says joint ownership. Lucent's contract in that case says existing work will remain the property of AT&T. AT&T's existing work remains the property of AT&T. The result of this court's holding in that case is that Fraunhofer is a co-owner of existing AT&T work. So it didn't matter whether it was jointly owned or Fraunhofer only. As long as there was co-mingling of something that Fraunhofer had an ownership interest in and AT&T had an ownership interest in, we had joint ownership. It's the same thing here. We have ownership of the design and a patent that includes the design. If the patent includes more, then we have co-ownership. All right, your time's up. So let's have Mr. Zia with his rebuttal time. To make the time equal, add one minute to his rebuttal time, please. I wanted to clear up the co-inventorship thing, because I think that's important here. It goes back to the design shape. Rady Dine said, copy the prior art, Med-Rad Balloon, that has the distal bulge and a flat portion. They didn't add anything as far as inventorship. Because not only Rady Dine, but I'll direct you to appendix pages 1325, 26, 27, and 28, 29, and 30, which show previous PolyZen rectal balloons with distal bulges. Rectal balloon distal bulge was in the prior art by PolyZen's prior devices. PolyZen made these. It was in the prior art. You couldn't get a patent on the shape. This isn't a patent on the shape. It isn't a patent on the design. It's a patent on using three layers to create a prior art shape. So there's no contribution of inventorship. And the claims, what I'm hearing here, is that if the claims specifically disclaimed any bulge, then Rady Dine would have no problem. PolyZen would own the whole thing. But then that patent wouldn't cover their device. Claim 1 covers a wide range of balloons. Claim 2 covers a wide range of balloons, but they have to include a distal bulge. Claim 2 does not cover the shape of the Rady Dine balloon. It's not limited to that shape. It's not a balloon of that shape. You say it doesn't cover that, and then you say it's not limited to. Correct. It doesn't cover it. If it doesn't cover it, then it's not included. But then you say it's not limited to, which sounds like it's included but covers other things. Which is it? Okay. It's both at the same time. It doesn't cover the shape because the shape's in the prior art, even in PolyZen's own work. It's in the prior art. So if you have a balloon of that shape, it does not infringe. If, however, the balloon of that shape, or a different shape, or that shape with a distal bulge and a bulge over here, if that balloon of a different shape or the same shape has three layers attached inside in the manner claimed, then it infringes, which is why this is not a patent to the design. It's not a patent to the shape. You can have the Rady Dine shape, and you can have a different shape or a modified Rady Dine shape. If it's got the right internals, it infringes. If it has the wrong internals, it doesn't infringe. What does internals mean? There has to be more than one layer. This is a single-layer balloon. The layers have to be attached in a manner as described. Proximal this, medial that. There's different ways that the layer... Because the prior art balloons... Maybe both sides contributed something to the elements that are recited in claim two. No, the prior art... Either side came to you with the idea of the bulging distal length. You came for... No, they came to you with it. You didn't go independently find the MedRab thing on your own. They were the ones that came to you and said, Hey, manufacturer of that, I want you to make this kind of balloon with this particular design, and I want it to be commercially feasible. And then it was your side that came up with the idea of, okay, in order for this to work, we're going to do multiple layers, and we know how to do that, and so now you want us to make it with this particular end shape, and we will do that. Correct. So both sides contributed something that ends up getting recited in claim two, claim three, claim five. It contributed something to the product, but not to the patent, because PolyZen already made balloons with distal bulges, and PolyZen couldn't sell them this shape because they sell it to another customer. PolyZen couldn't sell them this shape because they sell it to a different customer. Radiodon wanted their own shape, their own design. They said, okay, the shape, the design, that will only sell to you. The stuff inside, which the patent covers, is ours. And that's what the contract says. It didn't assign any ownership in any way. Time is up. I thank both counsel. The case is taken under submission. Thank you.